OPINION
Milton Wilkes appeals from a judgment of the Montgomery County Court of Common Pleas which granted a motion pursuant to Civ.R. 70.
This case concerns a dispute about the ownership of a Federal Communications Commission ("FCC") license for a low power television station in Dayton, Ohio and the stock ownership of Urban Communications Television, Inc. ("UCT"), a corporation created to operate the television station. A complete summary of the facts of the case can be found at Alexander v. Urban Communications Television, Inc. (June 23, 2000), Montgomery App. No. 16793, unreported.
On August 22, 1997, the trial court issued a decision and order determining the ownership of the television station's FCC license and of the UCT stock. The court determined that although the FCC license listed the licensee's name as "Milton Wilkes aka Urban Communications Television, Inc.," the license was, in fact, owned by UCT, not Wilkes. The court also concluded that Wilkes owned approximately one-seventh of the UCT stock, not a majority of the stock as he had argued. We affirmed the trial court's order on June 23, 2000.
On December 21, 2000, UCT filed a motion pursuant to Civ.R. 70 requesting, inter alia, that the trial court direct Wilkes to sign an FCC license transfer application. Apparently, a majority of UCT's stockholders had attempted to transfer the television station's FCC license to another communications company, but Wilkes had filed an objection to the transfer with the FCC and the FCC had not allowed the transfer.
On January 17, 2001, the trial court granted UCT's motion and ordered that, to the extent that Wilkes held title to the FCC license, the license was divested from him and "vested in the name of UCT." The court also ordered that an authorized officer of UCT was vested with authority to sign the appropriate FCC forms on behalf of Wilkes so that the FCC records could be corrected to show UCT's shareholders and their respective shares as determined by the trial court's August 22, 1997 decision.
Wilkes now appeals the trial court's decision granting UCT's Civ.R. 70 motion. He raises two assignments of error. We will only address the first assignment because we find it to be persuasive and dispositive.
 I. THE TRIAL COURT COMMITTED PREDJUDICIAL [sic] ERROR IN GRANTING [UCT'S] MOTION FOR SPECIFIC ACTS PURSUANT TO CIVIL RULE 70 FOR RULE 70 BY ITS OWN TERMS WAS NOT APPLICABLE[.]
Wilkes argues that the trial court erred in granting UCT's Civ.R. 70 motion because Civ.R. 70 was not applicable to this case. He argues that the trial court's August 22, 1997 order did not directly order him to do a specific act and thus he did not fail to comply with that prior court order. He claims that, pursuant to the August 22, 1997 ruling, the corporation had a duty to divide the stock, but it failed to do so. He also states that the trial court's August 22, 1997 decision referred to a "cable television permit" and that the FCC license was not actually discussed by the trial court.
Civ.R. 70 states, in part:
 If a judgment directs a party *** to perform any *** specific act, and the party fails to comply within the time specified, the court may, where necessary, direct the act to be done at the cost of the disobedient party by some other person appointed by the court, and the act when so done has like effect as if done by the party.
Civ.R. 70 gives a trial court the authority to enforce a previous court order that required a specific act to be performed. Tessler v. Ayer (1995), 108 Ohio App.3d 47, 52, 669 N.E.2d 891, 895. The rule requires, as express pre-conditions of its application, that first, there was a prior judgment or order directing the party to perform a specific act, and second, that the party failed to perform that act. Freeman v. Freeman (Dec. 16, 1997), Franklin App. No. 97APF05-706, unreported. If these preconditions were not satisfied, a judgment granting Civ.R. 70 relief is subject to reversal. Id.
Wilkes argues that the trial court's August 22, 1997 judgment did not directly order him to do a specific act. In its decision, the trial court concluded that an enforceable agreement had been made between six UCT shareholders. The agreement provided that five of the shareholders, including Wilkes, would receive 148 shares apiece and that the sixth shareholder would receive 10 shares. The court then ordered:
 All existing share certificates shall be canceled or corrected to accomplish the foregoing ownership. The authorized number of shares shall be increased by amendment of the articles to permit issuance of the necessary shares. Mr. Wilkes' certificate for 345 shares shall be canceled and replaced by a new certificate for him for 148 shares. All laws and regulations applicable to issuance of shares shall be observed.
Wilkes correctly argues that the trial court's ruling did not explicitly order him to perform a specific act. Thus, the trial court did err in granting UCT's Civ.R. 70 motion.
Wilkes incorrectly presumes, however, that the corporation's stock has yet to be redistributed because the shareholders have not held a paper meeting to cancel and reissue the stock certificates. Although the shareholders probably should hold a paper meeting to clean up the corporation's records, the fact that such meeting has not taken place is irrelevant. The trial court's August 22, 1997 order, as affirmed by our court, already redistributed UCT's stock and determined that UTC owned the FCC license. The shareholders were not required to hold a paper meeting to effectuate the stock redistribution or the determination that UTC owned the license. As of August 22, 1997, the stock was redistributed and ownership of the license determined. Wilkes is currently a minority shareholder in the corporation.
Further, it is apparent from the record and the trial court's August 22, 1997 decision that although the trial court used the term "permit," it was clearly discussing the television station's FCC license. Pursuant to the trial court's ruling, such license is the property of UCT, not Wilkes.
Because the trial court erred in granting the Civ.R. 70 motion, we must remand this case. On remand, the trial court should specifically order Wilkes to sign all necessary documents to transfer the television station's FCC license from the current licensee's name to UCT. The court should also specifically order Wilkes to sign all necessary documents so that the FCC records will be corrected to reflect UCT's shareholders and their respective shares as determined by the trial court's August 22, 1997 decision. The trial court should also set a specific deadline by which time Wilkes shall have complied with its order.
If Wilkes fails or refuses to comply with the order, the UCT shareholders can file a motion pursuant to Civ.R. 70. The trial court will then be able to properly grant that motion and direct that the specific acts be done at Wilkes' cost by another UCT officer and the UCT officer's signatures will have the effect as if Wilkes had signed the documents himself.
The first assignment of error is sustained.
The second assignment is overruled as moot.
The judgment of the trial court will be reversed and remanded for further proceedings consistent with this opinion.
FAIN, J., and YOUNG, J., concur.